1  ETHAN A. HORN, CA Bar No. 190296
   BENJAMIN H. ADAMS, CA Bar No. 272909
2  **DEAN OMAR BRANHAM SHIRLEY LLP**
   302 N. Market Street, Suite 300
3  Dallas, TX 75202
   Telephone (214) 722-5990
4  Facsimile (214) 722-5991

5  Attorneys for Plaintiffs

6

7                 IN THE UNITED STATES DISTRICT COURT

8              FOR THE CENTRAL DISTRICT OF CALIFORNIA

9                          WESTERN DIVISION

10

11 **DEBORAH SARVER,**                    Case No.
   **INDIVIDUALLY AND AS**
12 **PERSONAL REPRESENTATIVE**            Assigned to:
   **OF THE ESTATE OF JAMES**             United States District Judge
13 **SARVER, SABRINA SARVER, and**
   **JEREMIAH SARVER**                    **CIVIL ACTION COMPLAINT FOR**
14                           Plaintiffs,  **WRONGFUL DEATH AND SURVIVAL**
                                          **CLAIMS (NEGLIGENCE; STRICT**
15        vs.                             **LIABILITY; FALSE REPRESENTATION;**
                                          **INTENTIONAL TORT/INTENTIONAL**
16 **ARVINMERITOR, INC.,** *sued*         **FAILURE TO WARN/CONCEALMENT;**
   *individually and as successor-in-*    **CONSPIRACY)**
17 *interest to former automotive products*
   *segment of ROCKWELL*
18 *INTERNATIONAL*;                       **JURY TRIAL DEMANDED**
   **BADGER LUMBER CO., INC.;**
19 **BORG-WARNER MORSE TEC**
   **LLC***, sued individually and as*
20 *successor-in-interest to BORG-*
   *WARNER CORPORATION*;
21 **CARLISLE INDUSTRIAL BRAKE**
   **& FRICTION, INC.** *f/k/a MOTION*
22 *CONTROL INDUSTRIES, INC.*;
   **CATERPILLAR, INC.;**
23 **CUMMINS, INC.;**
   **DCO LLC,** *f/k/a DANA*
24 *CORPORATION*;
   **EATON CORPORATION;**
25 **E. I. DU PONT DE NEMOURS AND**
   **COMPANY;**
26

27

28

                                    **1**

**FORD MOTOR COMPANY**;
**GENUINE PARTS COMPANY,** *d/b/a RAYLOC, a/k/a NAPA*;
**THE GOODYEAR TIRE & RUBBER COMPANY**;
**GVW GROUP, LLC,** *sued individually and as successor-in-interest to AUTOCAR COMPANY, INC.*;
**HENNESSY INDUSTRIES, LLC,** *f/k/a HENNESSY INDUSTRIES, INC.*;
**HOLLINGSWORTH & VOSE COMPANY**;
**HONEYWELL INTERNATIONAL, INC.,** *f/k/a ALLIED-PRODUCTS LIABILITY SIGNAL, INC., sued as successor-in-interest to BENDIX CORPORATION*;
**HYSTER-YALE GROUP, INC.,** *sued individually and as successor-in-interest to NACCO MATERIALS, HANDLING GROUP, INC.*;
**KCG, INC.**, *sued individually and as successor-in-interest to RUCO, INC.*;
**MACK TRUCKS, INC.**;
**MCCORD CORPORATION**;
**MEADWESTVACO CORPORATION,** *f/k/a WESTVACO CORPORATION*;
**METROPOLITAN LIFE INSURANCE COMPANY;** *a wholly-owned subsidiary of METLIFE INC.*;
**MURCO WALL PRODUCTS, INC.**;
**NATIONAL AUTOMOTIVE PARTS ASSOCIATION LLC** *a/k/a NAPA*;
**NAVISTAR, INC.,** *f/k/a INTERNATIONAL TRUCK and ENGINE CORPORATION, sued successor in interest INTERNATIONAL HARVESTER COMPANY*;
**PACCAR, INC.**;
**PARKER-HANNIFIN**

2

ORIGINAL COMPLAINT FOR PERSONAL INJURY ACTION

CORPORATION;
PFIZER, INC.;
PNEUMO ABEX, LLC, *sued successor-in-interest to ABEX CORPORATION*;
THE PROCTER & GAMBLE COMPANY;
THE PROCTER & GAMBLE U.S. BUSINESS SERVICES COMPANY;
R.T. VANDERBILT HOLDING COMPANY, INC., *individually and as successor-in-interest to R.T. VANDERBILT COMPANY, INC.*;
SHELL OIL COMPANY;
SPX CORPORATION, *sued individually and as successor-in-interest to BEAR MANUFACTURING COMPANY*;
STANDARD MOTOR PRODUCTS, INC., *sued individually and as successor-in-interest to EIS AUTOMOTIVE*;
UNION CARBIDE CORPORATION;
VANDERBILT MINERALS, LLC, *f/k/a R.T. Vanderbilt Company, Inc., individually and as successor-in-interest to INTERNATIONAL TALC CO.*;
VOLVO CARS NORTH AMERICA, LLC, *sued individually and as successor-in-interest to VOLVO CARS NORTH AMERICA, INC.*;
VOLVO GROUP NORTH AMERICA, LLC;
WELCO MANUFACTURING COMPANY;
WYETH HOLDINGS, LLC, *f/k/a WYETH HOLDINGS CORPORATION, f/k/a AMERICAN CYANAMID COMPANY and sued individually and successor-it-interest-to THE PROCTER & GAMBLE COMPANY*;

**3**

1
2
3
4

**ZF ACTIVE SAFETY US, INC.,**
*sued individually and as successor-in-interest to KELSEY-HAYES COMPANY*; and
**DOES 1-450.**

                                        Defendants.

5
6

## CIVIL ACTION COMPLAINT

7
8
9
10

1.      PLAINTIFFS, DEBORAH SARVER, SABRINA SARVER and JEREMIAH **SARVER**, are the surviving heirs of Decedent JAMES SARVER, and bring this action for wrongful death pursuant to section 377.60 of the California Code of Civil Procedure.

11
12
13
14
15
16

2.      DEBORAH **SARVER, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JAMES SARVER,** brings this survival action pursuant to section 377.30 of the California Code of Civil Procedure. Plaintiffs sue the above-named Defendants for compensatory and punitive damages, by and through his attorneys, Dean Omar Branham Shirley, LLP, and hereby brings this Civil Action Complaint, and alleges:

17

## JURISDICTION AND VENUE

18
19
20
21

3.      This Court has jurisdiction over the parties pursuant to 28 USC §1332 because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs, and is between citizens of different states.

22
23

4.      This Court has personal jurisdiction over the Defendants because Plaintiffs' claims arise from Defendants' conduct in:

24
25
26

(a)      Transacting business in this State, including the sale, supply, purchase, and/or use of asbestos and/or asbestos-containing products, within this State;

27

(b)      Contracting to supply services or things in the State;

28

**4**

(c)     Commission of a tortious act in whole or in part in this State;

(d)     Having an interest in, using, or possessing real property in this State; and/or

(e)     Entering into a contract to be performed in whole or in part by either party in this State.

5.      Plaintiffs' claims against the Product Defendants, as defined herein, arise out of Defendants' purposeful efforts to serve directly or indirectly the market for their asbestos and/or asbestos-containing products in this State, either through direct sales or through utilizing an established distribution channel with the expectation that their products would be purchased and/or used within California.

6.      Plaintiffs' claims against the Premises Defendants, as defined herein, arise out of Defendants' ownership and/or control of real property located in Ohio, and other states at times relevant to this action, and the purchase and use of asbestos-containing products on their premises located in Ohio, and other states at times relevant to this action.

7.      All of the named Defendants are foreign corporations whose substantial and/or systematic business in California caused injury to Plaintiffs' Decedent, James Sarver, in this State, which subjects them to the jurisdiction of the California courts pursuant to the California Long-Arm Statute and the United States Constitution.

8.      Pursuant to 28 USC §1391, venue is proper in this judicial district because a substantial part of the events or omissions occurred in California.

ORIGINAL COMPLAINT FOR PERSONAL INJURY ACTION

**GENERAL ALLEGATIONS**

9.      Plaintiffs' Decedent, James Sarver, was diagnosed with mesothelioma, on or about August 2, 2019, and passed away from this disease on October 17, 2019.

10.     Plaintiffs' Decedent, James Sarver's cumulative exposure to asbestos as a result of acts and omissions of Defendants and their defective products, individually and together, was a substantial factor in causing Decedent's mesothelioma, other related injuries, and death and therefore under California law is the legal cause of Plaintiffs' and Decedent James Sarver's injuries, damages, and death.

11.     Plaintiffs' Decedent Sarver was not aware at the time of exposure that asbestos or asbestos-containing products presented any risk of injury and/or disease.

12.     Plaintiffs' Decedent, James Sarver, worked with, or in close proximity to others who worked with, asbestos-containing materials including but not limited to asbestos-containing products and other asbestos-containing materials manufactured and/or sold by Defendants identified above.

13.     Each of the named Defendants is liable for damages stemming from its own tortious conduct or the tortious conduct of an "alternate entity" as hereinafter defined. Defendants are liable for the acts of their "alternate entity" and each of them, in that there has been a corporate name change, Defendant is the successor by merger, by successor in interest, or by other acquisition resulting in a virtual destruction of Plaintiffs' remedy against each such "alternate entity"; Defendants, each of them, have acquired the assets, product line, or a portion thereof, of each such "alternate entity"; such "alternate entities" have acquired the assets, product line, or a portion thereof of each such Defendant; Defendants, each of them,

caused the destruction of Plaintiffs' remedy against each such "alternate entity"; each such

Defendant has the ability to assume the risk-spreading role of each such "alternate entity;" and

that each such defendant enjoys the goodwill originally attached to each "alternate entity."

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| ARVINMERITOR, INC. | sued individually and as successor-in-interest to former automotive products segment of ROCKWELL INTERNATIONAL |
| BORG-WARNER MORSE TEC LLC | sued individually and as successor-in-interest to BORG-WARNER CORPORATION |
| CARLISLE INDUSTRIAL BRAKE & FRICTION, INC. | f/k/a MOTION CONTROL INDUSTRIES, INC. |
| DCO LLC | f/k/a DANA CORPORATION |
| GENUINE PARTS COMPANY | d/b/a RAYLOC, a/k/a NAPA |
| GVW GROUP, LLC | sued individually and as successor-in-interest to AUTOCAR COMPANY, INC. |
| HENNESSY INDUSTRIES, LLC | f/k/a HENNESSY INDUSTRIES, INC. |
| HONEYWELL INTERNATIONAL, INC. | f/k/a ALLIED-PRODUCTS LIABILITY SIGNAL, INC., sued as successor-in-interest to BENDIX CORPORATION |
| KCG, INC. | sued individually and as successor-in-interest to RUCO, INC. |
| MEADWESTVACO CORPORATION | f/k/a WESTVACO CORPORATION |
| METROPOLITAN LIFE INSURANCE COMPANY | a wholly-owned subsidiary of METLIFE INC. |
| HYSTER-YALE GROUP, INC. | sued individually and as successor-in-interest to NACCO MATERIALS, HANDLING GROUP, INC. |

ORIGINAL COMPLAINT FOR PERSONAL INJURY ACTION

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| NATIONAL AUTOMOTIVE PARTS ASSOCIATION LLC | a/k/a NAPA |
| NAVISTAR, INC. | f/k/a INTERNATIONAL TRUCK and ENGINE CORPORATION, sued successor in interest INTERNATIONAL HARVESTER COMPANY |
| PNEUMO ABEX, LLC | sued successor-in-interest to ABEX CORPORATION |
| R.T. VANDERBILT HOLDING COMPANY, INC., | individually and as successor-in-interest to R.T. VANDERBILT COMPANY, INC. |
| SPX CORPORATION | sued individually and as successor-in-interest to BEAR MANUFACTURING COMPANY |
| STANDARD MOTOR PRODUCTS, INC. | sued individually and as successor-in-interest to EIS AUTOMOTIVE |
| VANDERBILT MINERALS, LLC, | f/k/a R.T. Vanderbilt Company, Inc., individually and as successor-in-interest to INTERNATIONAL TALC CO. |
| VOLVO CARS NORTH AMERICA, LLC | sued individually and as successor-in-interest to VOLVO CARS NORTH AMERICA, INC. |
| WYETH HOLDINGS, LLC | f/k/a WYETH HOLDINGS CORPORATION, f/k/a AMERICAN CYANAMID COMPANY and sued individually and successor-it-interest-to THE PROCTER & GAMBLE COMPANY |
| ZF ACTIVE SAFETY US, INC. | sued individually and as successor-in-interest to KELSEY-HAYES COMPANY |

14. Plaintiffs have been informed and believe, and thereon alleges, that at all times herein mentioned, Defendants or their "alternate entities" were or are corporations, partnerships, unincorporated associations, sole proprietorships and/or other business entities

organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said Defendants were and/or are authorized to do business in the State of California, and that said Defendants have regularly conducted business in the State of California.

15.     Plaintiffs have been informed and believe, and thereon alleges, that progressive lung disease, mesothelioma and other serious diseases are caused by inhalation of asbestos fibers without perceptible trauma and that said disease results from exposure to asbestos and asbestos-containing products over a period of time.

16.     As a direct and proximate result of the conduct as alleged within, Plaintiffs' Decedent, James Sarver, has suffered permanent injuries, including, but not limited to, mesothelioma, other lung damage, and death, as well as the mental and emotional distress attendant thereto, from the effect of exposure to asbestos fibers, all to his damage in the sum of the amount as the trier of fact determines is proper.

17.     As a direct and proximate result of the conduct as hereinafter alleged, Plaintiffs' Decedent, James Sarver, incurred and is continuing to incur liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays and other medical treatment, the true and exact amount thereof being unknown to Plaintiffs at this time.  Plaintiffs request leave to supplement this Court and all parties accordingly when the true and exact cost of Plaintiffs' Decedent, James Sarver's medical treatment is ascertained.

18.     As a further direct and proximate result of the conduct as hereinafter alleged, Plaintiffs' Decedent, James Sarver, has incurred, and will incur, loss of profits and commissions, a diminishment of earning potential, and other pecuniary losses, the full nature

and extent of which are not yet known to Plaintiffs.  Plaintiffs pray leave to supplement this Court and all parties accordingly to conform to proof at the time of trial.

## PARTIES

19.    The Plaintiff Deborah Sarver, widow of Decedent James Sarver, is currently a resident of the State of Ohio. Plaintiff Sabrina Sarver, heir of Decedent James Sarver, is currently a resident of the State of Ohio and Plaintiff Jeremiah Sarver, heir of Decedent James Sarver, is currently a resident of the State of Ohio.

20.    Plaintiffs' Decedent, James Sarver, was exposed to asbestos during the course of his career in the Navy while stationed at Port Hueneme, CA; from personal use of asbestos-containing automotive friction products; from various industrial plants near his home, including but not limited to, locations in Ohio; and from his personal daily use of talc power.

21.    The Defendants that manufactured, sold, and/or distributed asbestos-containing products or raw asbestos materials for use in California and other states at times relevant to this action are referred to herein as "Product Defendants." At all times relevant to this action, the Product Defendants and the predecessors of the Product Defendants for whose actions the Product Defendants are legally responsible, were engaged in the manufacture, sale, and distribution of asbestos-containing products and raw material.

22.    The Defendants that owned and/or controlled the premises from which Plaintiffs' Decedent, James Sarver, experienced environmental exposure as a result of living near plants working with asbestos-containing equipment and materials are referred to herein as "Environmental Defendants." Environmental Defendants owed a duty to prevent environmental exposures from harming those in the community surrounding its plants. Courts

ORIGINAL COMPLAINT FOR PERSONAL INJURY ACTION

have recognized that companies operating industrial plants near residential neighborhoods owe a duty of care to the surrounding community not to expose them to toxic pollutants. Environmental Defendants knew or should have known that those living nearby the plant were at serious risk of developing mesothelioma. Environmental Defendants had the means of controlling whether asbestos fibers escaped its property and contaminated the surrounding community but failed to utilize dust control measures and other practices to prevent or reduce the asbestos exposures around its plant. Environmental Defendants therefore owed a duty of care to Plaintiffs' Decedent, James Sarver based on his status as a member of the community surrounding the plant.

23.     Defendants that owned and/or controlled the work sites where Decedent experienced exposure as a result of living in close proximity to these work site with asbestos-containing equipment are referred to herein as the "Premises Defendants."

24.     At all times herein mentioned, each of the named Defendants was an entity and/or the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, subsidiary, or division of an entity, hereinafter referred to collectively as "alternate entities," engaged in the business of researching, studying, manufacturing, fabricating, designing, modifying, labeling, instructing, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising a certain product, namely asbestos, other products containing asbestos and products manufactured for foreseeable use with asbestos products.

25.     Defendant, **ARVINMERITOR, INC.**, sued individually and as successor-in-interest to former automotive products segment of ROCKWELL INTERNATIONAL, was and is a Delaware corporation with its principal place of business in Michigan.  At all times material hereto, ARVINMERITOR, INC. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Rockwell brakes, truck axles & transmissions.  ARVINMERITOR, INC. is sued as a Product Defendant. Plaintiffs' claims against ARVINMERITOR, INC. arise out of this Defendant's business activities in the State of California.

26.     Defendant, **BADGER LUMBER CO., INC.**, was and is a West Virginia corporation with its principal place of business in West Virginia.  At all times material hereto, BADGER LUMBER CO., INC. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing joint compound and other construction materials.  BADGER LUMBER CO., INC. is sued as a Product Defendant. Plaintiffs' claims against BADGER LUMBER CO., INC. arise out of this Defendant's business activities in the State of California.

27.     Defendant, **BORG-WARNER MORSE TEC LLC**, sued individually and as successor-in-interest to BORG-WARNER CORPORATION, was and is a Delaware limited liability company with its principal place of business in Michigan.  At all times material

hereto, BORG-WARNER MORSE TEC LLC mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Borg Warner brakes, transmissions and clutches. BORG-WARNER MORSE TEC LLC is sued as a Product Defendant. Plaintiffs' claims against BORG-WARNER MORSE TEC LLC arise out of this Defendant's business activities in the State of California.

28.     Defendant, **CARLISLE INDUSTRIAL BRAKE & FRICTION, INC.**, f/k/a MOTION CONTROL INDUSTRIES, INC., was and is a Delaware corporation with its principal place of business in Virginia. At all times material hereto, CARLISLE INDUSTRIAL BRAKE & FRICTION, INC. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Carlisle friction products.  CARLISLE INDUSTRIAL BRAKE & FRICTION, INC. is sued as a Product Defendant. Plaintiffs' claims against CARLISLE INDUSTRIAL BRAKE & FRICTION, INC. arise out of this Defendant's business activities in the State of California.

29.     Defendant, **CATERPILLAR, INC.**, was and is a Delaware corporation with its principal place of business in Illinois. At all times material hereto, CATERPILLAR, INC. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing

Caterpillar engines and heavy equipment. CATERPILLAR, INC. is sued as a Product Defendant. Plaintiffs' claims against CATERPILLAR, INC. arise out of this Defendant's business activities in the State of California.

30. Defendant, **CUMMINS, INC.**, was and is an Indiana corporation with its principal place of business in Indiana. At all times material hereto, CUMMINS, INC. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Cummins engines. CUMMINS, INC. is sued as a Product Defendant. Plaintiffs' claims against CUMMINS, INC. arise out of this Defendant's business activities in the State of California.

31. Defendant, **DCO LLC,** f/k/a DANA CORPORATION, was and is a Virginia limited liability company with its principal place of business in Ohio. At all times material hereto, DCO LLC mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Victor gaskets, Spicer clutches, and brakes. DCO LLC is sued as a Product Defendant. Plaintiffs' claims against DCO LLC arise out of this Defendant's business activities in the State of California.

32. Defendant, **EATON CORPORATION**, was and is an Ohio corporation with its principal place of business in Ohio. At all times material hereto, EATON CORPORATION mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-

containing products, materials, or equipment, including, but not limited to, asbestos-containing Eaton truck brakes. EATON CORPORATION is sued as a Product Defendant. Plaintiffs' claims against EATON CORPORATION arise out of this Defendant's business activities in the State of California.

33.     Defendant, **E. I. DU PONT DE NEMOURS AND COMPANY**, was and is a Delaware corporation with its principal place of business in Delaware. At all times material hereto, E. I. DU PONT DE NEMOURS AND COMPANY owned and/or controlled premises at which Plaintiff James Sarver was exposed to asbestos-containing products, and asbestos dust from said products at various facilities, including but not limited to, DuPont Chemical Plant in Parkersburg, West Virginia. E. I. DU PONT DE NEMOURS AND COMPANY is sued as an Environmental Defendant and Premises Defendant. Plaintiffs' claims against E. I. DU PONT DE NEMOURS AND COMPANY arise out of this Defendant's business activities in the State of California.

34.     Defendant, **FORD MOTOR COMPANY**, was and is a Delaware corporation with its principal place of business in Michigan. At all times material hereto, FORD MOTOR COMPANY mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Ford friction products. FORD MOTOR COMPANY is sued as a Product Defendant. Plaintiffs' claims against FORD MOTOR COMPANY arise out of this Defendant's business activities in the State of California.

**ORIGINAL COMPLAINT FOR PERSONAL INJURY ACTION**

35.   Defendant, **GENUINE PARTS COMPANY**, d/b/a RAYLOC, a/k/a NAPA, was and is a Georgia corporation with its principal place of business in Georgia. At all times material hereto, GENUINE PARTS COMPANY mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing friction products and Raylock brakes. GENUINE PARTS COMPANY is sued as a Product Defendant. Plaintiffs' claims against GENUINE PARTS COMPANY arise out of this Defendant's business activities in the State of California.

36.   Defendant, **THE GOODYEAR TIRE & RUBBER COMPANY**, was and is an Ohio corporation with its principal place of business in Ohio. At all times material hereto, THE GOODYEAR TIRE & RUBBER COMPANY mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Durabla gaskets. THE GOODYEAR TIRE & RUBBER COMPANY is sued as a Product Defendant. Plaintiffs' claims against THE GOODYEAR TIRE & RUBBER COMPANY arise out of this Defendant's business activities in the State of California.

37.   Defendant, **GVW GROUP, LLC**, sued individually and as successor-in-interest to AUTOCAR COMPANY, INC., was and is a Delaware limited liability company with its principal place of business in Illinois. At all times material hereto, GVW GROUP, LLC mined, manufactured, processed, imported, converted, compounded, supplied, installed,

replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Autocar friction products. GVW GROUP, LLC is sued as a Product Defendant. Plaintiffs' claims against GVW GROUP, LLC arise out of this Defendant's business activities in the State of California.

38.   Defendant, **HENNESSY INDUSTRIES, LLC**, f/k/a HENNESSY INDUSTRIES, INC., was and is a Delaware limited liability company with its principal place of business in Tennessee. At all times material hereto, HENNESSY INDUSTRIES, LLC developed, manufactured, marketed, distributed and/or sold products and/or equipment foreseeably designed to be used with asbestos-containing products and/or equipment, including but not limited to, asbestos-containing Ammco Arc grinders and grinders. HENNESSY INDUSTRIES, LLC is sued as a Product Defendant. Plaintiffs' claims against HENNESSY INDUSTRIES, LLC arise out of this Defendant's business activities in the State of California.

39.   Defendant, **HOLLINGSWORTH & VOSE COMPANY**, was and is a Massachusetts corporation with its principal place of business in Massachusetts. At all times material hereto, HOLLINGSWORTH & VOSE COMPANY mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Hollingsworth & Vose gasket paper. HOLLINGSWORTH & VOSE COMPANY is sued as a Product Defendant. Plaintiffs' claims against HOLLINGSWORTH & VOSE COMPANY arise out of this Defendant's business activities in the State of California.

**ORIGINAL COMPLAINT FOR PERSONAL INJURY ACTION**

40.    Defendant, **HONEYWELL INTERNATIONAL, INC.**, f/k/a ALLIED-PRODUCTS LIABILITY SIGNAL, INC., sued as successor-in-interest to BENDIX CORPORATION, was and is a Delaware corporation with its principal place of business in New Jersey. At all times material hereto, HONEYWELL INTERNATIONAL, INC. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Bendix brakes. HONEYWELL INTERNATIONAL, INC. is sued as a Product Defendant. Plaintiffs' claims against HONEYWELL INTERNATIONAL, INC. arise out of this Defendant's business activities in the State of California.

41.    Defendant, **HYSTER-YALE GROUP, INC.,** sued individually and as successor-in-interest to NACCO MATERIALS, HANDLING GROUP, INC., was and is a Delaware corporation with its principal place of business in Ohio. At all times material hereto, HYSTER-YALE GROUP, INC. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Hyster and Yale forklifts. HYSTER-YALE GROUP, INC. is sued as a Product Defendant. Plaintiffs' claims against HYSTER-YALE GROUP, INC. arise out of this Defendant's business activities in the State of California.

42.    Defendant, **KCG, INC.**, sued individually and as successor-in-interest to RUCO, INC., was and is an Arizona corporation with its principal place of business in Kansas. At all times material hereto, KCG, INC. mined, manufactured, processed, imported,

converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing asbestos fiber. KCG, INC. is sued as a Product Defendant. Plaintiffs' claims against KCG, INC. arise out of this Defendant's business activities in the State of California.

43. Defendant, **MACK TRUCKS, INC.**, was and is a Pennsylvania corporation with its principal place of business in North Carolina. At all times material hereto, MACK TRUCKS, INC. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing friction products. MACK TRUCKS, INC. is sued as a Product Defendant. Plaintiffs' claims against MACK TRUCKS, INC. arise out of this Defendant's business activities in the State of California.

44. Defendant, **MCCORD CORPORATION**, was and is a Michigan corporation with its principal place of business in Michigan. At all times material hereto, MCCORD CORPORATION mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing McCord gaskets. MCCORD CORPORATION is sued as a Product Defendant. Plaintiffs' claims against MCCORD CORPORATION arise out of this Defendant's business activities in the State of California.

**ORIGINAL COMPLAINT FOR PERSONAL INJURY ACTION**

45.     Defendant, **MEADWESTVACO CORPORATION**, f/k/a WESTVACO CORPORATION, was and is a Delaware corporation with its principal place of business in Virginia. At all times material hereto, MEADWESTVACO CORPORATION mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing friction paper. MEADWESTVACO CORPORATION is sued as a Product Defendant. Plaintiffs' claims against MEADWESTVACO CORPORATION arise out of this Defendant's business activities in the State of California.

46.     Defendant, **METROPOLITAN LIFE INSURANCE COMPANY**, was and is a company incorporated under the laws of the State of New York with its principal place of business in New York.  METROPOLITAN LIFE INSURANCE COMPANY has done and does business in the State of California.  METROPOLITAN LIFE INSURANCE COMPANY is named as a conspiracy defendant.

47.     Defendant, **MURCO WALL PRODUCTS, INC.**, was and is a Texas corporation with its principal place of business in Texas. At all times material hereto, MURCO WALL PRODUCTS, INC. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Murco joint compound. MURCO WALL PRODUCTS, INC. is sued as a Product Defendant. Plaintiffs' claims against MURCO WALL PRODUCTS, INC. arise out of this Defendant's business activities in the State of California.

**ORIGINAL COMPLAINT FOR PERSONAL INJURY ACTION**

48.   Defendant, **NATIONAL AUTOMOTIVE PARTS ASSOCIATION LLC,** a/k/a NAPA, was and is a Georgia limited liability company with its principal place of business in Georgia. At all times material hereto, NATIONAL AUTOMOTIVE PARTS ASSOCIATION LLC mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing automotive parts. NATIONAL AUTOMOTIVE PARTS ASSOCIATION LLC is sued as a Product Defendant. Plaintiffs' claims against NATIONAL AUTOMOTIVE PARTS ASSOCIATION LLC arise out of this Defendant's business activities in the State of California.

49.   Defendant, **NAVISTAR, INC.,** f/k/a INTERNATIONAL TRUCK and ENGINE CORPORATION, successor in interest INTERNATIONAL HARVESTER COMPANY, was and is a Delaware corporation with its principal place of business in Illinois. At all times material hereto, NAVISTAR, INC. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing friction products. NAVISTAR, INC.  is sued as a Product Defendant. Plaintiffs' claims against NAVISTAR, INC. arise out of this Defendant's business activities in the State of California.

50.   Defendant, **PACCAR, INC.,** was and is a Delaware corporation with its principal place of business in Washington. At all times material hereto, PACCAR, INC. mined, manufactured, processed, imported, converted, compounded, supplied, installed,

replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing friction products. PACCAR, INC. is sued as a Product Defendant. Plaintiffs' claims against PACCAR, INC. arise out of this Defendant's business activities in the State of California.

51. Defendant, **PARKER-HANNIFIN CORPORATION**, was and is an Ohio corporation with its principal place of business in Ohio. At all times material hereto, PARKER-HANNIFIN CORPORATION mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing EIS brakes. PARKER-HANNIFIN CORPORATION is sued as a Product Defendant. Plaintiffs' claims against PARKER-HANNIFIN CORPORATION arise out of this Defendant's business activities in the State of California.

52. Defendant, **PFIZER, INC.**, was and is a Delaware corporation with its principal place of business in New York. At all times material hereto, PFIZER, INC. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing talc. PFIZER, INC. is sued as a Product Defendant. Plaintiffs' claims against PFIZER, INC. arise out of this Defendant's business activities in the State of California.

53. Defendant, **PNEUMO ABEX, LLC**, sued successor-in-interest to ABEX CORPORATION, was and is a Delaware limited liability company with its principal place of

business in New Jersey. At all times material hereto, PNEUMO ABEX, LLC mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing friction products. PNEUMO ABEX, LLC is sued as a Product Defendant. Plaintiffs' claims against PNEUMO ABEX, LLC arise out of this Defendant's business activities in the State of California.

54.     Defendant, **THE PROCTER & GAMBLE COMPANY**, was and is an Ohio corporation with its principal place of business in Ohio. At all times material hereto, THE PROCTER & GAMBLE COMPANY mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Old Spice talc products and talc. THE PROCTER & GAMBLE COMPANY is sued as a Product Defendant. Plaintiffs' claims against THE PROCTER & GAMBLE COMPANY arise out of this Defendant's business activities in the State of California.

55.     Defendant, **THE PROCTER & GAMBLE U.S. BUSINESS SERVICES COMPANY**, was and is an Ohio corporation with its principal place of business in Ohio. At all times material hereto, THE PROCTER & GAMBLE U.S. BUSINESS SERVICES COMPANY mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-

containing Old Spice talc products and talc. THE PROCTER & GAMBLE U.S. BUSINESS SERVICES COMPANY is sued as a Product Defendant. Plaintiffs' claims against THE PROCTER & GAMBLE U.S. BUSINESS SERVICES COMPANY arise out of this Defendant's business activities in the State of California.

56.     Defendant, **R.T. VANDERBILT HOLDING COMPANY, INC.**, individually and as successor-in-interest to R.T. VANDERBILT COMPANY, INC. was and is a Delaware corporation with its principal place of business in Connecticut.  At all times material hereto, R.T. VANDERBILT HOLDING COMPANY, INC. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, supplier of asbestos-containing talc. R.T. VANDERBILT HOLDING COMPANY, INC. is sued as a Product Defendant.  Plaintiffs' claims against R.T. VANDERBILT HOLDING COMPANY, INC. arise out of this Defendant's business activities in the State of California.

57.     Defendant, **SHELL OIL COMPANY**, was and is a Delaware corporation with its principal place of business in Texas. At all times material hereto, SHELL OIL COMPANY owned and/or controlled premises at which Plaintiff James Sarver was exposed to asbestos-containing products, and asbestos dust from said products at various facilities, including but not limited to, Shell Chemical Plant in Belpre, Ohio. SHELL OIL COMPANY is sued as an Environmental Defendant and Premises Defendant. Plaintiffs' claims against SHELL OIL COMPANY arise out of this Defendant's business activities in the State of California.

**ORIGINAL COMPLAINT FOR PERSONAL INJURY ACTION**

58.    Defendant, **SPX CORPORATION**, sued individually and as successor-in-interest to BEAR MANUFACTURING COMPANY, was and is a Delaware corporation with its principal place of business in North Carolina. At all times material hereto, SPX CORPORATION developed, manufactured, marketed, distributed and/or sold products and/or equipment foreseeably designed to be used with asbestos-containing products and/or equipment, including but not limited to, asbestos-containing Bear brake grinding equipment. SPX CORPORATION is sued as a Product Defendant. Plaintiffs' claims against SPX CORPORATION arise out of this Defendant's business activities in the State of California.

59.    Defendant, **STANDARD MOTOR PRODUCTS, INC.**, sued individually and as successor-in-interest to EIS AUTOMOTIVE, was and is an Ohio corporation with its principal place of business in Ohio. At all times material hereto, STANDARD MOTOR PRODUCTS, INC. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing EIS brakes. STANDARD MOTOR PRODUCTS, INC.  is sued as a Product Defendant. Plaintiffs' claims against STANDARD MOTOR PRODUCTS, INC. arise out of this Defendant's business activities in the State of California.

60.    Defendant, **UNION CARBIDE CORPORATION**, was and is a Delaware corporation with its principal place of business in Texas. At all times material hereto, UNION CARBIDE CORPORATION mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not

limited to, asbestos-containing joint compound. Additionally, UNION CARBIDE CORPORATION owned and/or controlled premises at which Plaintiff James Sarver was exposed to asbestos-containing products, and asbestos dust from said products at various facilities, including but not limited to, Union Carbide Chemical Plant in South Charleston, West Virginia. UNION CARBIDE CORPORATION is sued as a Product Defendant, an Environmental Defendant, and Premises Defendant. Plaintiffs' claims against UNION CARBIDE CORPORATION arise out of this Defendant's business activities in the State of California.

61.    Defendant, **VANDERBILT MINERALS, LLC**, f/k/a R.T. Vanderbilt Company, Inc., individually and as successor-in-interest to INTERNATIONAL TALC CO. was and is a Delaware corporation with its principal place of business in Connecticut.  At all times material hereto, VANDERBILT MINERALS, LLC mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, supplier of asbestos-containing talc. VANDERBILT MINERALS, LLC is sued as a Product Defendant.  Plaintiffs' claims against VANDERBILT MINERALS, LLC arise out of this Defendant's business activities in the State of California.

62.    Defendant, **VOLVO CARS NORTH AMERICA, LLC**, sued individually and as successor-in-interest to VOLVO CARS NORTH AMERICA, INC., was and is a Delaware limited liability company with its principal place of business in New Jersey. At all times material hereto, VOLVO CARS NORTH AMERICA, LLC mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed

substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing automotive friction products. VOLVO CARS NORTH AMERICA, LLC is sued as a Product Defendant. Plaintiffs' claims against VOLVO CARS NORTH AMERICA, LLC arise out of this Defendant's business activities in the State of California.

63.     Defendant, **VOLVO GROUP NORTH AMERICA, LLC**, was and is a Delaware limited liability company with its principal place of business in North Carolina. At all times material hereto, VOLVO GROUP NORTH AMERICA, LLC mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing automotive friction products. VOLVO GROUP NORTH AMERICA, LLC is sued as a Product Defendant. Plaintiffs' claims against VOLVO GROUP NORTH AMERICA, LLC arise out of this Defendant's business activities in the State of California.

64.     Defendant, **WELCO MANUFACTURING COMPANY**, was and is a Missouri corporation with its principal place of business in Missouri. At all times material hereto, WELCO MANUFACTURING COMPANY mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Welcote joint compound. WELCO MANUFACTURING COMPANY is sued as a Product Defendant. Plaintiffs' claims against

WELCO MANUFACTURING COMPANY arise out of this Defendant's business activities in the State of California.

66. Defendant, **WYETH HOLDINGS, LLC**, f/k/a WYETH HOLDINGS CORPORATION, f/k/a AMERICAN CYANAMID COMPANY and sued individually and successor-it-interest-to THE PROCTER & GAMBLE COMPANY, was and is a Maine limited liability company with its principal place of business in New York. At all times material hereto, WYETH HOLDINGS, LLC mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Old Spice talc products and talc. WYETH HOLDINGS, LLC is sued as a Product Defendant. Plaintiffs' claims against WYETH HOLDINGS, LLC arise out of this Defendant's business activities in the State of California.

66. Defendant, **ZF ACTIVE SAFETY US, INC.**, sued individually and as successor-in-interest to KELSEY-HAYES COMPANY, was and is a Delaware corporation with its principal place of business in Michigan. At all times material hereto, ZF ACTIVE SAFETY US, INC. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Kelsey Hayes brakes and clutches. ZF ACTIVE SAFETY US, INC. is sued as a Product Defendant. Plaintiffs' claims against ZF ACTIVE SAFETY US, INC. arise out of this Defendant's business activities in the State of California.

ORIGINAL COMPLAINT FOR PERSONAL INJURY ACTION

67.    The true names and capacities, whether individual, corporate, associate, governmental or otherwise, of Defendant DOES 1 through 450, inclusive, are unknown to Plaintiffs at this time, who therefore sue said Defendants by such fictitious names. When the true names and capacities of said Defendants have been ascertained, Plaintiffs will amend this complaint accordingly. Plaintiffs are informed and believe, and thereon allege, that each Defendant designated herein as a DOE is responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and caused injuries and damages proximately thereby to the Plaintiffs, as hereinafter alleged.

## BACKGROUND FACTS

68.    Plaintiffs Deborah Sarver, Individually and as Personal Representative of the Estate of James Sarver, Sabrina Sarver And Jeremiah Sarver, bring this action for monetary damages as a result of Plaintiffs' Decedent, James Sarver, contracting an asbestos-related disease.

69.    Plaintiffs' Decedent, James Sarver, was diagnosed with malignant Mesothelioma on or about August 2, 2019 and died as a result of this disease on October 17, 2019.

70.    Plaintiffs' Decedent James Sarver's mesothelioma was caused by his exposure to asbestos during the course of his employment in the Navy, in his work with friction products, personal daily talc usage, and from environmental exposure to asbestos during his life.

71.    During his Naval work history, Plaintiffs' Decedent, James Sarver, was exposed to Defendants' asbestos-containing products through his work as a mechanic from approximately 1966 to 1970 while assigned to Mobile Construction Battalion 4 at Naval

Construction Battalion Center in Port Hueneme, in Ventura County, California. As a naval mechanic, he was responsible for maintenance of automotive and diesel mechanical work on, including but not limited to, 2.5-ton trucks, jeeps, and other wheeled vehicles. This included but, was not limited to, gasket, engine, and brake work. His responsibilities and activities as a Naval mechanic exposed Plaintiffs' Decedent, James Sarver, to asbestos.

72.     During Plaintiffs' Decedent's lifetime, he performed automotive maintenance on his personal vehicles where he was exposed to various asbestos-containing automotive friction products. Plaintiffs' Decedent was exposed to asbestos-containing automotive friction products including but not limited to asbestos gaskets, brakes, and other asbestos-containing automotive materials.

73.     During his lifetime, Plaintiffs' Decedent, James Sarver, lived near DuPont Chemical Plant in Parkersburg, West Virginia, Shell Chemical Plant in Belpre, Ohio, and Union Carbide Chemical Plant in South Charleston, West Virginia. Each defendant, respectively, caused certain asbestos-containing insulation and other asbestos- products, other asbestos-containing building materials and products and toxic substances to be constructed, installed, maintained, used, supplied, replaced, repaired, distributed, swept, and/or vacuumed on each respective premises, by their own workers and/or by various contractors, and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substance into the ambient air and thereby created hazardous and unsafe condition to Plaintiffs' Decedent, James Sarver, and other persons exposed to said asbestos fibers and toxic substances while near and /or present at said premises. All of these activities exposed Plaintiffs' Decedent, James Sarver, to asbestos.

ORIGINAL COMPLAINT FOR PERSONAL INJURY ACTION

74.     From approximately the 1960's through the 1970's, Plaintiffs' Decedent, James Sarver, was regularly and frequently exposed to asbestos-containing Old Spice talc powder products, the use of which generated dust and exposed him to respirable asbestos fibers.

75.     Plaintiffs' Decedent, James Sarver's cumulative exposure to asbestos as a result of acts and omissions of Defendants and their defective products, individually and together, was a substantial factor in causing Decedent's mesothelioma and other related injuries and therefore under California law, is the legal cause of Plaintiffs' Decedent, James Sarver's injuries, damages, and death.

76.     Plaintiffs' Decedent, James Sarver was not aware at the time of exposure that asbestos or asbestos-containing products presented any risk of injury and/or disease.

77.     Plaintiffs are informed and believe, and thereon alleges, that progressive lung disease, mesothelioma and other serious diseases are caused by inhalation of asbestos fibers without perceptible trauma and that said disease results from exposure to asbestos and asbestos-containing products over a period of time.

78.     As a direct and proximate result of the conduct as alleged within, Plaintiffs' Decedent, James Sarver, suffered permanent injuries, including, but not limited to, mesothelioma, other lung damage, and death, as well as the mental and emotional distress attendant thereto, from the effect of exposure to asbestos fibers, all to his damage in the sum of the amount as the trier of fact determines is proper.

79.     As a direct and proximate result of the conduct as hereinafter alleged, Plaintiffs' Decedent, James Sarver, incurred and is continuing to incur liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays and other medical treatment, the true and

ORIGINAL COMPLAINT FOR PERSONAL INJURY ACTION

exact amount thereof being unknown to Plaintiffs at this time.  Plaintiffs request leave to supplement this Court and all parties accordingly when the true and exact cost of Plaintiffs' Decedent James Sarver's medical treatment is ascertained.

80.     As a further direct and proximate result of the conduct as hereinafter alleged, Plaintiffs have incurred, and will incur, loss of profits and commissions, a diminishment of earning potential, and other pecuniary losses, the full nature and extent of which are not yet known to Plaintiffs.  Plaintiffs pray leave to supplement this Court and all parties accordingly to conform to proof at the time of trial.

## **FIRST CAUSE OF ACTION**

### (Negligence)

PLAINTIFFS COMPLAIN OF DEFENDANTS AND DOES 1-450, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGE AS FOLLOWS:

81.     Plaintiffs incorporate herein by reference, as though fully set forth therein, the general allegations set forth above.

82.     At all times herein mentioned, each of the named Defendants and DOES 1 through 450 were the successor, successor-in-business, successor-in-product line or a portion thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising asbestos, and products containing asbestos, including but not limited to, those products identified in the paragraphs

above.  Said entities shall hereinafter collectively be called "alternate entities."  Each of the herein named Defendants is liable for the tortious conduct of each successor, successor-in-business, successor-in-product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, repaired, marketing, warranted, re-branded, manufactured for others and advertised asbestos, and asbestos products.  The following Defendants, and each of them, are liable for the acts of each and every "alternate entity", and each of them, in that there has been a virtual destruction of Plaintiffs' remedy against each such "alternate entity"; Defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such "alternate entity"; Defendants, and each of them, have caused the destruction of Plaintiffs' remedy against each such "alternate entity"; each such Defendant has the ability to assume the risk-spreading role of each such "alternate entity"; and that each such Defendant enjoys the goodwill originally attached to each such "alternate entity".

83.     At all times herein mentioned, Defendants, their "alternate entities", and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, renting, marketing, warranting, re-branding, manufacturing for others, packaging, and advertising asbestos and asbestos products (hereinafter Defendants' Products).

84.     At all times herein mentioned, Defendants, their "alternate entities", and each of them, singularly and jointly, negligently and carelessly researched, manufactured, fabricated,

ORIGINAL COMPLAINT FOR PERSONAL INJURY ACTION

specified, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, rented, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged, and advertised Defendants' Products, including but not limited to those products identified in the paragraphs above, in that the Defendants' Products were unreasonably dangerous because they released respirable asbestos fibers which resulted in personal injuries to users, consumers, workers, bystanders, and others, including Plaintiffs' Decedent, James Sarver, herein (hereinafter collectively called "exposed person").  Said products were used at all times in a manner that was reasonably foreseeable to Defendants, their "alternate entities," and each of them, thereby rendering said products unsafe and dangerous for use by "exposed person".  Plaintiffs herein allege that Plaintiffs' Decedent, James Sarver's exposure to Defendants' Products, including but not limited to those products identified in the paragraphs above (hereinafter referred to as "Defendants' products" or "Defendants' asbestos and asbestos-containing products"), were a substantial contributing factor in the development of his malignant mesothelioma, and therefore proximately caused Plaintiffs' Decedent James Sarver's death.

85.    Defendants, their "alternate entities," and each of them, had a duty to exercise reasonable care while engaging in the activities mentioned above and each Defendant breached said duty of reasonable care in that Defendants, and each of them, failed to safely and adequately design, manufacture and/or sell Defendants' products; failed to test said products; failed to investigate the hazards of said products; failed to warn "exposed person", including Plaintiffs' Decedent, James Sarver, of the health hazards of using Defendants'

products; failed to disclose the known or knowable dangers of using Defendants' products; failed to obtain suitable alternative materials to asbestos when such alternatives were available; and as otherwise stated herein.

86. The Defendants' products were and are hazardous to the health and safety of Plaintiffs' Decedent, James Sarver and others in his position working with and in close proximity to such products, and since on or before 1930, the hazards and dangerous propensities of the Defendants' products were both known and knowable to the Defendants, their "alternate entities", and each of them, through the use of medical and/or scientific data and other knowledge available to Defendants, their "alternate entities", and each of them at the time of Defendants' manufacture, distribution, sale, research, study, fabrication, design, modification, labeling, assembly, leasing, buying, offering for sale, supply, inspection, service, installation, contracting for installation, repair, marketing, warranting, re-branding, re-manufacturing for others, packaging and advertising, of those products, which clearly indicated the hazards and dangerous propensities of asbestos presented a substantial danger to users, including Plaintiffs' Decedent, James Sarver, of Defendants' Products through the intended and reasonably foreseeable use of those products.

87. Defendants, their "alternate entities", and each of them, knew, or reasonably should have known, that Defendants' Products were dangerous and were likely to be dangerous when used in their intended and reasonably foreseeable manner.

88. Defendants, their "alternate entities", and each of them, knew, or reasonably should have known, that Defendants' Products would be installed, repaired, maintained, overhauled, removed, sawed, chipped, hammered, mixed, scraped, sanded, swept, broken,

"ripped out," or otherwise disturbed in their ordinary, intended and foreseeable use, resulting in the release of airborne hazardous and dangerous asbestos fibers, and that through such activity, "exposed person," including Plaintiffs' Decedent, James Sarver, herein, would be exposed to said hazardous and dangerous asbestos fibers.  Defendants, their "alternate entities", and each of them, knew or reasonably should have known that users, such as Plaintiffs' Decedent, James Sarver, and others in his position, working with and in close proximity to Defendants' Products would not realize or know the danger.  Defendants, their "alternate entities," and each of them negligently failed to adequately warn or instruct of the dangers of the products.  A reasonable designer, manufacturer, distributor, seller, installer, buyer or supplier, under the same or similar circumstances, would have warned of the dangers to avoid exposing others to a foreseeable risk of harm.  The negligent failure of Defendants, their "alternate entities," and each of them to warn was a substantial factor in causing harm to Plaintiffs' Decedent, James Sarver.

89.    Plaintiffs' Decedent, James Sarver, used, handled, or was otherwise exposed to asbestos from Defendants' Products referred to herein in a manner that was reasonably foreseeable to Defendants and each of them.  Decedent's exposure to Defendants' Products occurred at various locations set forth in Exhibit "A", which is attached hereto and incorporated by reference herein.

90.    As a direct and proximate result of the conduct of the Defendants, their "alternate entities", and each of them, as aforesaid, Plaintiffs' Decedent, James Sarver's exposure to asbestos from use of Defendants' Products caused Decedent's injuries and death.  Plaintiffs are informed and believe, and thereon allege, that death from progressive lung

ORIGINAL COMPLAINT FOR PERSONAL INJURY ACTION

disease, cancer and other serious diseases are caused by inhalation of asbestos fibers without perceptible trauma and that said disease results from exposure to Defendants' Products over a period of time.

91.     Plaintiffs' Decedent, James Sarver, suffered and died from malignant pleural mesothelioma, caused by exposure to asbestos from Defendants' Products including those products identified above.  Plaintiffs' Decedent, James Sarver, was not aware at the time of exposure that Defendants' Products presented any risk of injury and/or disease.

92.     As a direct and proximate result of the aforesaid conduct of Defendants, their "alternate entities," and each of them, Plaintiffs have suffered and will continue to suffer permanent injuries and future injuries to their persons, body and health, including, but not limited to, pain, discomfort, loss of weight, loss of appetite, fatigue, somnolence, lethargy, dyspnea, dysphagia, and other physical symptoms, and the mental and emotional distress attendant thereto, all to their general damage in a sum in excess of the jurisdictional limit of a limited civil case.

93.     As a direct and proximate result of the aforesaid conduct of the Defendants, their "alternate entities", and each of them, Decedent incurred, and Plaintiffs have incurred, are presently incurring, and will incur in the future, liability for physicians, surgeons, nurses, hospital care, medicine, hospices, X-rays and other medical treatment, the true and exact amount thereof being presently unknown to Plaintiffs, subject to proof at trial.

94.     As a further direct and proximate result of the said conduct of the Defendants, their "alternate entities", and each of them, Plaintiffs and their Decedent have incurred, and will incur, loss of income, wages, profits and commissions, a diminishment of earning

potential, funeral and burial expenses and other pecuniary losses, the true and exact amount thereof being presently unknown to Plaintiffs, subject to proof at trial.  As a further direct and proximate result of the said conduct of the Defendants, their "alternate entities," Plaintiffs have been, and in the future will be, deprived of the support, society, solace, care, comfort, companionship, affection, advice, services and guidance of Decedent, James Sarver, the full nature and extent of which are not yet known to Plaintiffs and leave is requested to amend this complaint to conform to proof at the time of trial.

95.    Plaintiffs further allege that Defendants, their "alternate entities", and each of them, also engaged in the following wrongful acts:

(a)    Defendants, their "alternate entities", and each of them, suppressed from all consumers, including Plaintiffs' Decedent, James Sarver, medical and scientific information concerning the health hazards associated with inhalation of asbestos, including the substantial risk of injury or death therefrom.  Although Defendants, and each of them, knew of the substantial risks associated with exposure to asbestos, they willfully and knowingly concealed such information from the users of their asbestos and/or asbestos-containing products in conscious disregard of the rights, safety and welfare of "exposed person", including Plaintiffs' Decedent, James Sarver.

(b)    Defendants, their "alternate entities", and each of them, belonged to, participated in, and financially supported industry organizations, including but not limited to the Gypsum Association, Asbestos Information Association, Industrial Hygiene Foundation and others, which, for and on behalf of Defendants, their "alternate entities", and each of them, actively promoted the suppression of information about the dangers of asbestos to users of the aforementioned products and materials, thereby misleading Plaintiffs' Decedent, James Sarver, as to the safety of their products.

Through their participation and association with such industry organizations, Defendants and each of them knowingly and deliberately concealed and suppressed the true information regarding asbestos and its dangers, and propagated misinformation intended to instill in users of Defendants' Products a false security about the safety of their products. The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute, was specifically enlisted to study the subject of dust control. Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers, which arise from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to Plaintiffs' Decedent, James Sarver, at this time;

(c)     Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford Mines in Quebec, Canada, and the study of the workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, Defendants, their "alternate entities", and each of them, knew and possessed medical and scientific information of the connection between the inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other Defendants, their "alternate entities", and each of them, herein. Between 1942 and 1950, the Defendants, their "alternate entities", and each of them, failed to provide this information to consumers;

(d)     Defendants, their "alternate entities", and each of them, failed to warn Plaintiffs' Decedent, James Sarver, and others of the nature of said materials which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that Defendants, their "alternate entities", and each of them, possessed knowledge and were under a duty to disclose that said materials were dangerous and a threat to the health of persons coming into contact therewith;

(e)     Defendants, their "alternate entities", and each of them, failed to provide Plaintiffs' Decedent, James Sarver, with information concerning adequate protective

masks and other equipment devised to be used when applying, mixing, installing and sanding the products of the Defendants, their "alternate entities", and each of them, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that such materials were dangerous and would result in injury to Plaintiffs' Decedent, James Sarver, and others applying and installing such material;

(f)     Defendants, their "alternate entities", and each of them, knew and failed to disclose that Plaintiffs' Decedent, James Sarver, and anyone similarly situated, upon inhalation of asbestos would, in time, have a substantial risk of developing irreversible conditions of pneumoconiosis, asbestosis, mesothelioma and/or cancer;

(g)     Defendants, their "alternate entities", and each of them, failed to provide information of the true nature of the hazards of asbestos materials and that exposure to these material would cause pathological effects without noticeable trauma to the public, including buyers, users, and physicians employed by Plaintiffs' Decedent, James Sarver, so that said physicians could not examine, diagnose, and treat Plaintiff and others who were exposed to asbestos, despite the fact that Defendants, their "alternate entities", and each of them, were under a duty to so inform and said failure was misleading.

96.     Defendants, their "alternate entities", and each of them, and their officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein. Defendants, their "alternate entities", and each of them, are liable for the oppressive and malicious acts of their "alternate entities", and each of them, and each Defendant's officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified,

**ORIGINAL COMPLAINT FOR PERSONAL INJURY ACTION**

and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

97.     The herein-described conduct of said Defendants, their "alternate entities", and each of them, was and is willful, malicious, oppressive, outrageous, and in conscious disregard and indifference to the safety and health of "exposed person," including Plaintiffs' Decedent, James Sarver, in that Defendants, and each of them, continued to manufacture, market and/or sell dangerous products known to cause severe, permanent injuries and death, despite possessing knowledge of the substantial hazards posed by use of their products, in order to continue to profit financially therefrom.  Defendants, their "alternate entities", and each of them, engaged in such conduct so despicable, contemptible, base, vile, miserable, wretched and loathsome as to be looked down upon and despised by ordinary people and justifies an award of punitive and exemplary damages pursuant to Civil Code section 3294.  Plaintiffs, for the sake of example and by way of punishing said Defendants, seek punitive damages according to proof.

98.     Defendants and each of them engaged in conduct which was intended by Defendants and each of them to cause injury to the Plaintiffs, and despicable conduct which was carried on by the Defendants with a willful and conscious disregard of the rights or safety of others, including Plaintiffs' Decedent, James Sarver.

99.     Defendants, and each of them, engaged in the despicable conduct described herein that subjected persons, including Plaintiffs' Decedent, James Sarver, to cruel and unjust hardship in the form of severe, debilitating and fatal diseases like asbestosis, lung cancer and mesothelioma, and death, in conscious disregard of those persons' rights.

100.   As a direct and proximate result of such intentional conduct by Defendants, their "alternate entities" and each of them, Plaintiff and their Decedent, James Sarver, sustained the injuries and damages alleged herein.

WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate entities", and each of them, as hereinafter set forth.

## SECOND CAUSE OF ACTION

### (Strict Liability)

AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR STRICT LIABILITY, PLAINTIFFS COMPLAIN OF DEFENDANTS, DOES 1-450, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND ALLEGE AS FOLLOWS:

101.   Plaintiffs incorporate herein by reference, as though fully set forth therein, each and every one of the general allegations and the allegations contained in the First Cause of Action herein.

102.   Defendants, their "alternate entities", and each of them, sold the aforementioned Defendants' Products and failed to adequately warn or instruct of the known and knowable dangers and risks of the ordinary, intended, and foreseeable use of their products, which dangers and risks would not have been, and were not, recognized by ordinary consumers of the products, including Plaintiffs' Decedent, James Sarver, and the lack of sufficient instructions and/or warnings was a substantial factor in causing harm to Plaintiffs' Decedent, James Sarver, and others in Decedent's position working with and in close proximity to such products.

103.   Defendants' Products were defective and unsafe for their intended purpose and foreseeable use in that, when used, handled, installed, repaired, maintained, overhauled,

removed, sawed, chipped, hammered, mixed, scraped, sanded, swept, broken, "ripped out," or otherwise disturbed, said products would result in the release, and therefore inhalation of, hazardous and dangerous asbestos fibers by exposed person, including Plaintiffs' Decedent, James Sarver. The defect existed in all of said products when they left the possession of the Defendants, their "alternate entities," and each of them.  At the time Defendants' Products were used by Plaintiffs' Decedent, James Sarver, and others in Decedent's position working with and in close proximity to such products, the products were substantially the same as when they left the possession of the Defendants, their "alternate entities," and each of them and/or any changes made to the products after they left the possession of Defendants, their "alternate entities", and each of them were reasonably foreseeable to Defendants, their "alternate entities", and each of them.  Defendants' asbestos and asbestos products were used by Plaintiffs' Decedent, James Sarver, and others in Decedent's position working with and in close proximity to such products, in a way that was reasonably foreseeable to Defendants, and each of them.  The defect in said products was a substantial factor in causing harm and personal injuries to Plaintiffs' Decedent, James Sarver, including malignant mesothelioma and death, while being used in a reasonably foreseeable manner, thereby rendering said products defective, unsafe, and unreasonably dangerous for their ordinary and intended use.

104.   As a direct and proximate result of the actions and conduct outlined herein, Defendants' Products failed to perform as safely as an ordinary consumer would have expected in that Defendants' products, and each of them, during their ordinary and intended use, and such hazardous exposures lacked any perceptible qualities to the human body, yet they cause severe and fatal diseases, including asbestosis, lung cancer, mesothelioma and

other cancers in humans.  Plaintiffs further allege that "exposed persons,", including Plaintiffs' Decedent, James Sarver, were unaware of the harmful effects of asbestos and further unaware of the harmful exposures to Defendants' Products when such exposures occurred, and thus the failure of Defendants' products to perform as safely as Plaintiffs' Decedent, James Sarver, had reason to expect was a substantial factor in causing his injuries.

105.    As a direct and proximate result of the actions and conduct outlined herein, Plaintiffs and their Decedent, James Sarver, suffered the injuries and damages alleged herein.

106.    Plaintiffs further allege that Defendants, their "alternate entities", and each of them, also engaged in the following wrongful acts:

(a)    Defendants, their "alternate entities", and each of them, suppressed from all consumers, including Plaintiffs' Decedent, James Sarver, medical and scientific information concerning the health hazards associated with inhalation of asbestos, including the substantial risk of injury or death therefrom.  Although Defendants, and each of them, knew of the substantial risks associated with exposure to asbestos, they willfully and knowingly concealed such information from the users of their asbestos and/or asbestos-containing products in conscious disregard of the rights, safety and welfare of "exposed person", including Plaintiffs' Decedent, James Sarver.

(b)    Defendants, their "alternate entities", and each of them, belonged to, participated in, and financially supported industry organizations, including but not limited to the Gypsum Association, Asbestos Information Association, Industrial Hygiene Foundation and others, which, for and on behalf of Defendants, their "alternate entities", and each of them, actively promoted the suppression of information about the dangers of asbestos to users of the aforementioned products and materials, thereby misleading Plaintiffs' Decedent, James Sarver, as to the safety of their products.

ORIGINAL COMPLAINT FOR PERSONAL INJURY ACTION

Through their participation and association with such industry organizations, Defendants and each of them knowingly and deliberately concealed and suppressed the true information regarding asbestos and its dangers, and propagated misinformation intended to instill in users of Defendants' Products a false security about the safety of their products.  The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute, was specifically enlisted to study the subject of dust control.  Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers, which arise from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to Plaintiffs' Decedent, James Sarver, at this time;

(c)     Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford Mines in Quebec, Canada, and the study of the workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, Defendants, their "alternate entities", and each of them, knew and possessed medical and scientific information of the connection between the inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other Defendants, their "alternate entities", and each of them, herein.  Between 1942 and 1950, the Defendants, their "alternate entities", and each of them, failed to provide this information to consumers;

(d)     Defendants, their "alternate entities", and each of them, failed to warn Plaintiffs' Decedent, James Sarver, and others of the nature of said materials which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that Defendants, their "alternate entities", and each of them, possessed knowledge and were under a duty to disclose that said materials were dangerous and a threat to the health of persons coming into contact therewith;

(e)     Defendants, their "alternate entities", and each of them, failed to provide Plaintiffs' Decedent, James Sarver, with information concerning adequate protective

masks and other equipment devised to be used when applying, mixing, installing and sanding the products of the Defendants, their "alternate entities", and each of them, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that such materials were dangerous and would result in injury to Plaintiffs' Decedent, James Sarver, and others applying and installing such material;

(f)     Defendants, their "alternate entities", and each of them, knew and failed to disclose that Plaintiffs' Decedent, James Sarver, and anyone similarly situated, upon inhalation of asbestos would, in time, have a substantial risk of developing irreversible conditions of pneumoconiosis, asbestosis, mesothelioma and/or cancer;

(g)     Defendants, their "alternate entities", and each of them, failed to provide information of the true nature of the hazards of asbestos materials and that exposure to these materials would cause pathological effects without noticeable trauma to the public, including buyers, users, and physicians employed by Plaintiffs' Decedent, James Sarver, so that said physicians could not examine, diagnose, and treat Plaintiffs' Decedent, and others who were exposed to asbestos, despite the fact that Defendants, their "alternate entities", and each of them, were under a duty to so inform and said failure was misleading; and

107.   Defendants, their "alternate entities", and each of them, and their officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein. Defendants, their "alternate entities", and each of them, are liable for the oppressive and malicious acts of their "alternate entities", and each of them, and each Defendant's officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified,

**ORIGINAL COMPLAINT FOR PERSONAL INJURY ACTION**

and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

108.   The herein-described conduct of said Defendants, their "alternate entities", and each of them, was and is willful, malicious, oppressive, outrageous, and in conscious disregard and indifference to the safety and health of "exposed person," including Plaintiffs' Decedent, James Sarver, in that Defendants, and each of them, continued to manufacture, market and/or sell dangerous products known to cause severe, permanent injuries and death, despite possessing knowledge of the substantial hazards posed by use of their products, in order to continue to profit financially therefrom.  Defendants, their "alternate entities", and each of them, engaged in such conduct so despicable, contemptible, base, vile, miserable, wretched and loathsome as to be looked down upon and despised by ordinary people and justifies an award of punitive and exemplary damages pursuant to Civil Code section 3294.  Plaintiffs, for the sake of example and by way of punishing said Defendants, seek punitive damages according to proof.

109.   Defendants and each of them engaged in conduct which was intended by Defendants and each of them to cause injury to the Plaintiffs, and despicable conduct which was carried on by the Defendant with a willful and conscious disregard of the rights or safety of others, including Plaintiffs' Decedent, James Sarver.

110.   Defendants, and each of them, engaged in the despicable conduct described herein that subjected persons, including Plaintiffs' Decedent, James Sarver, to cruel and unjust hardship in the form of severe, debilitating and fatal diseases like asbestosis, lung cancer and mesothelioma, in conscious disregard of those persons' rights.

111.   As a direct and proximate result of such intentional conduct by Defendants, their "alternate entities" and each of them, Plaintiffs and their Decedent, James Sarver, sustained the injuries and damages alleged herein.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and their "alternate entities", and each of them, as hereinafter set forth.

### THIRD CAUSE OF ACTION

(False Representation)

AS AND FOR A FURTHER THIRD, SEPARATE, AND DISTINCT CAUSE OF ACTION FOR FALSE REPRESENTATION, PLAINTIFFS COMPLAIN OF DEFENDANTS, DOES 1-450, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

112.   Plaintiffs incorporate herein by reference, as though fully set forth herein, the allegations contained in each of the preceding paragraphs.

113.   At the aforementioned time when Defendants, their "alternate entities", and each of them, researched, manufactured, fabricated, designed, modified, tested or failed to test, inadequately warned or failed to warn, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged and advertised the said asbestos and asbestos-containing products, as hereinabove set forth, the Defendants, their "alternate entities", and each of them, expressly and impliedly represented to members of the general public, including the purchasers and users of said product, and other "exposed persons", including, without limitation, Plaintiffs' Decedent, James Sarver, and his employers, that asbestos and asbestos-containing products, were of merchantable quality, and safe for the use for which they were intended.

**ORIGINAL COMPLAINT FOR PERSONAL INJURY ACTION**

114.    The purchasers and users of said asbestos and asbestos-containing products, and other "exposed persons", including, without limitation, Plaintiffs' Decedent, James Sarver, and his employers, relied upon said representations of Defendants, "alternate entities", and each of them, in the selection, purchase, and use of asbestos and asbestos-containing products.

115.    Said representation by Defendants, their "alternate entities", and each of them, were false and untrue, and Defendants knew at the time they were untrue, in that the asbestos and asbestos-containing products and equipment were not safe for their intended use, nor were they of merchantable quality as represented by Defendants, their "alternate entities", and each of them, in that asbestos and asbestos-containing products and equipment have very dangerous properties and defects whereby said products cause asbestosis, other lung damages, and cancer, and have other defects that cause injury and damage to the users of said products and other "exposed persons", thereby threatening the health and life of said persons, including Plaintiffs' Decedent, James Sarver, herein.

116.    As a direct and proximate result of said false representations by Defendants, their "alternate entities", and each of them, Plaintiffs sustained the injuries and damages alleged herein.

WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate entities", and each of them, as hereinafter set forth.

## FOURTH CAUSE OF ACTION

(Intentional Tort / Intentional Failure to Warn / Concealment)

AS AND FOR A FURTHER FOURTH, SEPARATE, AND DISTINCT CAUSE OF ACTION FOR INTENTIONAL TORT / INTENTIONAL FAILURE TO WARN / CONCEALMENT, PLAINTIFFS COMPLAIN OF DEFENDANTS, DOES 1-450, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

**ORIGINAL COMPLAINT FOR PERSONAL INJURY ACTION**

117.    Plaintiffs incorporate herein by reference, as though fully set forth herein, the allegations contained in each of the preceding paragraphs.

118.    At all times pertinent hereto, the Defendants, their "alternate entities", and each of them, owed Plaintiff a duty, as provided for in Section 1708, 1709, and 1710 of the Civil Code of the State of California, to abstain from injuring the person, property, or rights of the Plaintiff.  When a duty to act was imposed, as set forth herein, the Defendants, their "alternate entities", and each of them, did do the acts and omissions in violation of that duty, thereby causing injury to Plaintiffs as is more fully set forth herein.  Such acts and omissions consisted of acts falling within Section 1709 (Fraudulent Deceit) and Section 1710 (Deceit) of the Civil Code of the State of California and, more specifically, included suggestions of fact which were not true and which Defendants, their "alternate entities", and each of them, did not believe to be true; assertions of fact which were not true and which Defendants, their "alternate entities", and each of them, had no reasonable ground for believing to be true, and the suppression of fact when a duty existed to disclose it, all as more fully set forth herein; the violation of any one such duty gave rise to a cause of action for violation of rights of Plaintiffs as provided for in the aforementioned Civil Code sections.

119.    Since on or before 1930, the Defendants, their "alternate entities", and each of them, have known and have possessed the true facts of medical and scientific data and other knowledge which clearly indicated that the asbestos and asbestos-containing products and equipment referred to in Plaintiffs' First Cause of Action were and are hazardous to the health and safety of Plaintiffs' Decedent, James Sarver, and others in Plaintiffs' Decedent, James Sarver's position working in close proximity with such materials.  The Defendants, their

"alternate entities", and each of them, have known of the dangerous propensities of the aforementioned materials and products since before that time. With intent to deceive Plaintiffs' Decedent, James Sarver, and others in Plaintiffs' Decedent, James Sarver's position, and with intent that he and such others should be and remain ignorant of such facts with intent to induce Plaintiffs' Decedent, James Sarver and such others to alter his and their positions to his and their injury and/or risk and in order to gain advantages, the following acts occurred:

(a)     Defendants, their "alternate entities", and each of them, did not label any of the aforementioned asbestos-containing materials, products, and equipment regarding the hazards of such materials and products to the health and safety of Plaintiffs' Decedent, James Sarver, and others in Plaintiffs' Decedent, James Sarver's position working in close proximity with such materials until 1964, when certain of such materials were labeled by some, but not all, of Defendants, their "alternate entities", and each of them, since on or before 1930.  By not labeling such materials, products, and equipment as to their said hazards, Defendants, their "alternate entities", and each of them, caused to be suggested as a fact to Plaintiffs' Decedent, James Sarver, that it was safe for Plaintiffs' Decedent, James Sarver, to work in close proximity to such materials, when in fact it was not true; and Defendants, their "alternate entities", and each of them, did not believe it to be true;

(b)     Defendants, their "alternate entities", and each of them, suppressed information relating to the danger of use of the aforementioned materials, products, and equipment by requesting the suppression of information to the Plaintiffs' Decedent, James Sarver, and the general public concerning the dangerous nature of the aforementioned materials to workers, by not allowing such information to be disseminated in a manner which would have given general notice to the public and

knowledge of the hazardous nature thereof when Defendants, their "alternate entities", and each of them, were bound to disclose such information;

(c)     Defendants, their "alternate entities", and each of them, sold the aforementioned products, materials, and equipment to Plaintiffs' Decedent, James Sarver's employers, the employers of others in Plaintiffs' Decedent, James Sarver's position, and others without advising Plaintiffs' Decedent, James Sarver, his employer, and others of the dangers of use of such materials to persons working in close proximity thereto when Defendants, their "alternate entities", and each of them, knew of such dangers, and had a duty to disclose such dangers all as set forth herein.  By said conduct, Defendants, their "alternate entities", and each of them, caused to be positively asserted to Plaintiffs' Decedent, James Sarver that which was not true and that which Defendants, their "alternate entities," and each of them had no reasonable ground for believing to be true, to wit: that it was safe for Plaintiffs' Decedent, James Sarver to work in close proximity to such materials;

(d)     Defendants, their "alternate entities", and each of them, suppressed from Plaintiffs' Decedent, James Sarver's medical and scientific data and knowledge of the results of studies including, but not limited to, the information and contents of the "Lanza Report."  Although bound to disclose it, Defendants, their "alternate entities", and each of them, influenced A. J. Lanza, M.D. to change his report, the altered version of which was published in Public Health Reports, Volume 50, at page 1, in 1935, thereby causing Plaintiff and others to be and remain ignorant thereof.  Defendants, their "alternate entities", and each of them, caused Asbestos Magazine, a widely disseminated trade journal, to omit mention of danger, thereby lessening the probability of notice of danger to the users thereof;

(e)     Defendants, their "alternate entities", and each of them, belonged to, participated in, and financially supported the Asbestos Textile Institute Industrial Hygiene Foundation and other industry organizations which, for and on behalf of

Defendants, their "alternate entities", and each of them, actively promoted the suppression of information of danger to users of the aforementioned products and materials, thereby misleading Plaintiffs' Decedent, James Sarver by the suggestions and deceptions set forth above in this cause of action.  The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute, was specifically enlisted to study the subject of dust control.  Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers, which arise from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to Plaintiffs' Decedent, James Sarver, at this time;

(f)      Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford Mines in Quebec, Canada, and the study of the workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, Defendants, their "alternate entities", and each of them, knew and possessed medical and scientific information of the connection between the inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other Defendants, their "alternate entities", and each of them, herein.  Between 1942 and 1950, the Defendants, their "alternate entities", and each of them, suggested to the public as a fact that which is not true and disseminated other facts likely to mislead Plaintiff.  Such facts did mislead Plaintiffs' Decedent, James Sarver, and others by withholding the afore-described medical and scientific data and other knowledge and by not giving Plaintiffs' Decedent, James Sarver, the true facts concerning such knowledge of danger, which Defendants, their "alternate entities", and each of them, were bound to disclose;

(g)      Defendants, their "alternate entities", and each of them, failed to warn Plaintiffs' Decedent, James Sarver, and others of the nature of said materials which were dangerous when breathed and which could cause pathological effects without

noticeable trauma, despite the fact that Defendants, their "alternate entities", and each of them, possessed knowledge and were under a duty to disclose that said materials were dangerous and a threat to the health of persons coming into contact therewith;

(h)     Defendants, their "alternate entities", and each of them, failed to provide Plaintiffs' Decedent, James Sarver, with information concerning adequate protective masks and other equipment devised to be used when applying and installing the products of the Defendants, their "alternate entities", and each of them, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that such materials were dangerous and would result in injury to Plaintiffs' Decedent, James Sarver, and others applying and installing such material;

(i)     Defendants, their "alternate entities", and each of them, when under a duty to so disclose, concealed from Plaintiffs' Decedent, James Sarver, the true nature of the industrial exposure of Plaintiffs' Decedent, James Sarver, and knew that Plaintiff and anyone similarly situated, upon inhalation of asbestos would, in time, develop irreversible conditions of pneumoconiosis, asbestosis, and/or cancer.  Defendants, their "alternate entities", and each of them, also concealed from Plaintiffs' Decedent, James Sarver, and others that harmful materials to which they were exposed would cause pathological effects without noticeable trauma;

(j)     Defendants, their "alternate entities", and each of them, failed to provide information of the true nature of the hazards of asbestos materials and that exposure to these material would cause pathological effects without noticeable trauma to the public, including buyers, users, and physicians employed by Plaintiffs' Decedent, James Sarver, so that said physicians could not examine, diagnose, and treat Plaintiffs' Decedent, James Sarver, and others who were exposed to asbestos, despite the fact that Defendants, their "alternate entities", and each of them, were under a duty to so inform and said failure was misleading; and

(k)     Defendants, their "alternate entities", and each of them, failed to provide

ORIGINAL COMPLAINT FOR PERSONAL INJURY ACTION

adequate information to physicians and surgeons retained by Plaintiffs' Decedent, James Sarver's employers and their predecessor companies, for purposes of making physical examinations of Plaintiffs' Decedent, James Sarver, and other employees as to the true nature and risk of such materials and exposure thereto when they in fact possessed such information and had a duty to disclose it.

120.   Defendants, their "alternate entities", and each of them, willfully failed and omitted to complete and file a First Report of Occupational Injury or Illness regarding Plaintiffs' Decedent, James Sarver's injuries, as required by law, and did willfully fail and omit to file a Report of Injury and Occupational Disease with the State of California. Plaintiffs' Decedent, James Sarver, was in the class of persons with respect to whom a duty was owed to file such reports and who would have been protected thereby if the fact of danger from products complained of had become known.

121.   Defendants, their "alternate entities", and each of them, having such aforementioned knowledge, and the duty to inform Plaintiffs' Decedent, James Sarver, about the true facts, and knowing the Plaintiffs' Decedent, James Sarver, did not possess such knowledge and would breathe such material innocently, acted falsely and fraudulently and with full intent to cause Plaintiffs' Decedent, James Sarver, to remain unaware of the true facts and to induce Plaintiffs' Decedent, James Sarver, to work in a dangerous environment, all in violation of Sections 1708, 1709, and 1710 of the Civil Code of the State of California.

122.   As a direct and proximate result of such intentional conduct by Defendants, their "alternate entities" and each of them, Plaintiffs' Decedent, James Sarver, sustained the injuries and damages alleged herein.  The herein-described conduct of said Defendants, their "alternate

entities", and each of them was and is willful, malicious, fraudulent, outrageous, and in conscious disregard and indifference to the safety and health of "exposed persons".  Plaintiffs, for the sake of example and by way of punishing said Defendants, seek punitive damages according to proof.

WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate entities", and each of them, as is hereinafter set forth.

### FIFTH CAUSE OF ACTION

### (PREMISES LIABILITY)

AS AND FOR A FURTHER FIFTH, SEPARATE, AND DISTINCT CAUSE OF ACTION FOR PREMISES LIABILITY, PLAINTIFFS COMPLAIN OF PREMISES DEFENDANTS, DOES 1-450, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

123.   Plaintiffs incorporate herein by reference, as though fully set forth herein, the allegations contained in each of the preceding paragraphs.

124.   Decedent James Sarver lived in close proximity near premises owned and/or controlled by the Premises Defendants at which he was exposed to asbestos products and dust from asbestos products.

125.   While living near close proximity to the premises owned and/or controlled by the Premises Defendants, Decedent James Sarver was continuously exposed to asbestos and asbestos-containing dust without the provision of appropriate safeguards by the Premises Defendants who had the responsibility for such safeguards.

126.   Plaintiffs would further show that Decedent James Sarver's injuries and diseases were the result of intentional acts and/or omissions and/or negligence, gross negligence and malice in the use of asbestos at premises owned and/or controlled by the Premises Defendants.

Premises Defendants failed to properly remove and/or abate said asbestos at their facilities during the time Decedent James Sarver lived in close proximity.

127.   Plaintiffs would show that Premises Defendants were negligent, grossly negligent and malicious, and committed certain intentional acts, all of which were the proximate cause of the disease, injuries resulting in mesothelioma, and death of Decedent, from exposure to asbestos.

128.   In particular, Plaintiffs would show that Premises Defendants demonstrated such an entire want of care as to establish that their acts and omissions were the result of actual conscious indifference to the rights, safety, and welfare of Decedent James Sarver, and that such intentional acts and omissions proximately caused Decedent James Sarver's disease, injuries, and subsequent death.

129.   Specific intentional acts and acts constituting negligence, gross negligence and malice committed by Premises Defendants that proximately caused Decedent James Sarver's injuries, disease, and death include:

> (a)   Failure to provide safe equipment for use on premises;
>
> (b)   Failure to provide adequate safety measures and protection against deadly and life-threatening asbestos dust, all despite Premises Defendants' knowledge of the extreme risk of harm inherent to asbestos exposure;
>
> (c)   Failure to adequately warn Decedent James Sarver of the inherent dangers of asbestos contamination;
>
> (d)   Failure to maintain the ambient and environmental conditions of the premise in proper and safe condition;
>
> (e)   Failure to follow and adhere to various states and U.S. Government statutes, regulations and guidelines pertaining to asbestos and the exposure to asbestos of individuals.  Such failure constituted negligence per se at a minimum.

**ORIGINAL COMPLAINT FOR PERSONAL INJURY ACTION**

130.   Plaintiff would further show that Premises Defendants intentionally, knowingly, and/or due to negligence, gross negligence and malice, failed to ensure that individuals such as Decedent James Sarver were protected from the inhalation of asbestos and asbestos fibers. Such actions proximately caused Decedent James Sarver's injuries, illness, and subsequent death.

131.   Additionally, specific actions or omissions on the part of Premises Defendants that proximately caused Decedent James Sarver's injuries, illness, and subsequent were:

(a)   Attempting to remove asbestos dust in Decedent James Sarver's vicinity without taking adequate precautions for the protection of workers in the vicinity and/or in the premises generally;

(b)   Failing to provide proper protective gear for individuals exposed to asbestos;

(c)   Failing to provide adequate ventilation to ensure that individuals in the vicinity were not exposed to asbestos;

(d)   Failing to provide a proper and safe method for the use of asbestos and asbestos fibers;

(e)   Failing to adhere to industry safe standards and other established measures to protect workers from harm; and

(f)   Failing to adequately warn of the extreme risk of danger of inherent to asbestos exposure.

132.   Premises Defendants demonstrated such an entire want of care as to establish that its acts and omissions alleged above were the result of actual conscious indifference to the rights, safety, and welfare of Decedent James Sarver.

WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate

entities", and each of them, as is hereinafter set forth.

## SIXTH CAUSE OF ACTION

### (Conspiracy)

AS AND FOR A FURTHER SIXTH, SEPARATE, AND DISTINCT CAUSE OF ACTION FOR CONSPIRACY, PLAINTIFFS COMPLAIN OF DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY, DOES 1-450, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

133. Defendant METROPOLITAN LIFE INSURANCE COMPANY rendered substantial aid and assistance to the manufacturers of asbestos containing products to which Plaintiffs' Decedent, James Sarver, was exposed, and such assistance by Metropolitan Life aided and abetted the negligence and the marketing of unreasonably dangerous asbestos containing products by such manufacturers which proximately caused Plaintiffs' Decedent, James Sarver's illness, injuries, and death.

134. In both conducting tests and in publishing their alleged results, METROPOLITAN LIFE failed to exercise reasonable care to conduct or publish complete, adequate and accurate tests of the health effects of asbestos. METROPOLITAN LIFE also caused to be published intentionally false, misleading, inaccurate and deceptive information about the health effects of asbestos exposure.

135. Plaintiffs' Decedent, James Sarver, unwittingly but justifiably relied upon the thoroughness of METROPOLITAN LIFE's tests and information dissemination, the results of which Metropolitan Life published in leading medical journals.

136. As a direct and proximate contributing result of METROPOLITAN LIFE's failures to conduct or accurately publish adequate tests or disseminate accurate and truthful information, after undertaking to do so; (i) the risk of harm to Plaintiffs' Decedent, James

Sarver, from asbestos exposure was increased, and (ii) Plaintiffs' Decedent, James Sarver, suffered the injuries and death described herein.

137.   In failing to test fully and adequately for the adverse health effects from exposure to asbestos; in delaying the publication of such results; and in falsely editing such results as were obtained; in suppressing relevant medical inquiry and knowledge about those hazards to promote the sale and distribution of asbestos as a harmless product; and in collaborating with the other Defendants materially to understate the hazards of asbestos exposure, all for its own profit and gain, METROPOLITAN LIFE acted recklessly, wantonly, and in calculated disregard for the welfare of the general public, including Plaintiffs' Decedent, James Sarver.

WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate entities", and each of them, in an amount to be proved at trial in each individual case, as follows:

FOR ESTATE OF JAMES SARVER, by and through its Personal Representative, DEBORAH SARVER:

1.   For DECEDENT's medical and related expenses according to proof;

2.   For DECEDENT's loss of income, wages, and earning potential according to proof;

3.   For exemplary or punitive damages, according to proof;

FOR PLAINTIFFS DEBORAH SARVER, Individually, SABRINA SARVER, and JEREMIAH SARVER:

4.   For PLAINTIFFS' medical and related expenses according to proof;

5.   For PLAINTIFFS' loss of income and income potential caused by DECEDENT's death, and for PLAINTIFFS' loss of Decedent's financial

ORIGINAL COMPLAINT FOR PERSONAL INJURY ACTION

support and financial contributions;

6.   For funeral and burial expenses caused by DECEDENT's death;

7.   For PLAINTIFFS' general damages according to proof, including damages for their loss of the support, society, solace, care, comfort, companionship, affection, advice, services and guidance of Decedent, James Sarver;

FOR ALL PLAINTIFFS:

8.   For Plaintiffs' cost of suit herein;

9.   For exemplary or punitive damages according to proof;

10.  For such other and further relief as the Court may deem just and proper, including costs and prejudgment interest as provided in C.C.P. section 998, C.C.P. section 1032, and related provisions of law.

DATED:  February 26, 2020          **DEAN OMAR BRANHAM SHIRLEY LLP**

By: _____
     Ethan A. Horn
     Benjamin H. Adams
     Attorneys for Plaintiffs

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury as to all issues so triable.

DATED: February 26, 2020          **DEAN OMAR BRANHAM SHIRLEY LLP**

By: _____
     Ethan A. Horn
     Benjamin H. Adams
     Attorneys for Plaintiffs

**ORIGINAL COMPLAINT FOR PERSONAL INJURY ACTION**

## EXHIBIT "A"

Plaintiffs' Decedent James Sarver's exposure to asbestos and asbestos-containing products occurred at various locations within the States of California, including, but not limited to:

| Employer | Location of Exposure | Job Title | Exposure Date(s) |
|---|---|---|---|
| Naval Construction Battalion Center | Port Hueneme, CA | Naval Mechanic | 1966-1970 |

**ORIGINAL COMPLAINT FOR PERSONAL INJURY ACTION**

**EXHIBIT "B"**

     Decedent James Sarver's exposure to Defendants' Products caused severe and permanent injury to Plaintiffs' Decedent James Sarver including, but not limited to, death from mesothelioma.  Plaintiff was diagnosed with mesothelioma on or about August 2, 2019 and died of that disease on October 17, 2019.

**ORIGINAL COMPLAINT FOR PERSONAL INJURY ACTION**